UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
UNITED STATES OF AMERICA,

        Plaintiff,

  -against-

DARREN GOODRICH,

        Defendant.
------------------------------------------------------------- x

MEMORANDUM & ORDER

14-CR-399 (ENV)

VITALIANO, D.J.

  An experienced player in a multi-million dollar "pump and dump" stock fraud, defendant Darren Goodrich pled guilty to Count 1 of a superseding indictment, which charged conspiracy to commit securities fraud, in violation of 18 U.S.C. § 371. *See* Dkt. No. 659.[1] Cubed, Inc. ("Cubed"), a publicly traded stock, was the object of Goodrich's market manipulations. On July 12, 2018, the Court sentenced him to a 41-month term of custody. Dkt. No. 651. Restitution was ordered at that time, but the amount of the award was to be determined after a separate hearing for that purpose. The restitution hearing was held on October 24, 2018.

  For the following reasons, an award of restitution against Goodrich is ordered in the amount of $2,329,007.05, which shall be payable, in accordance with this Order, to the victims identified on the list filed under seal on the docket. *See* Dkt. No. 681.

### Discussion

  The Mandatory Victims Restitution Act ("MVRA") provides that "the court shall order restitution to each victim [of a covered crime] in the *full amount* of each victim's losses." 18

---

[1] Goodrich had previously pled guilty in a similar case, No. 16-cr-630, and was sentenced in both cases on the same day.

1

U.S.C. § 3664(f)(1)(A) (emphasis added). Given this individualized remedial purpose, the computation of restitution will often differ from the economic gain or loss computation used in the calculation of a defendant's sentencing guidelines. This disparity is at the heart of Goodrich's first objection to the order of restitution advanced by the government and embraced by Probation. In pressing his objection, Goodrich essentially relies on the factually accurate argument that he arrived at the theater after the play started and, as a result, should not be treated the same for restitution purposes as are his partners in the criminal manipulation of Cubed stock, who were there from the start of the play.

This argument carried more than some weight in calculating Goodrich's sentencing guidelines. The manipulation of Cubed stock was underway before Goodrich entered the conspiracy on April 22, 2014. On that date, Cubed stock was trading at $5 per share. To determine the economic gain or loss for sentencing guidelines purposes, it was only just that the $5 per share figure be used as the base price in the computation of Goodrich's guidelines. Before the crash of Cubed stock, the peak daily closing price was $6.75 per share, which meant that, starting from a $5 per share base price, the economic gain or loss determinant for his guidelines would be the difference between the two prices, which equaled $1.75 per share.

Although it may sound paradoxical that the computation of restitution could ever differ from the guidelines computation of the economic loss or gain attributable to an offense triggering the right to restitution, it is not rare and this is one such case. The reason for the seeming disconnect is the different focus of each inquiry. In computing the applicable sentencing guidelines, the focus is on the individual criminal responsibility of the offender. In computing restitution, however, the focus is on the victims and their losses, not the offender. An offender's responsibility for restitution, therefore, is measured by the losses caused by the offender's

2

wrongful conduct combined with the losses caused by the wrongful conduct of others that was reasonably foreseeable by the offender.

Plainly, in applying MVRA here, the sentencing court's first order of business is to determine the loss sustained by all victims as a result of the crime of conviction. With that understanding, the computation of the victims' loss does not depend on the price at which the stock was trading when Goodrich entered the conspiracy. It depends on the unmanipulated, true value of Cubed stock when shares were purchased after he joined the conspiracy. As the record established, from the beginning and during and after the fraudulent "pump" until the crash, Cubed stock was inherently worthless. The base price per share for the computation of restitution, therefore, is zero. The individual losses of victims who purchased Cubed shares after Goodrich joined the conspiracy, computed at the time of the crash, are fully chargeable to Goodrich, who was then still a member of the stock manipulating conspiracy. Contrary to Goodrich's argument, the $1.75 per share determinant used to calculate his guidelines cannot be used, in harmony with the spirit and letter of MVRA, to mitigate the losses of the scheme's victims. Goodrich is fully responsible for restitution, computed at $479,007.05, attributable to public market trades of Cubed stock after he joined the conspiracy on April 22, 2014.

Striving to confine his exposure, Goodrich next complains that he should not owe restitution for losses beyond those resulting from public trading, because his involvement in the scheme was limited solely to Cubed's publicly traded stock and there is no evidentiary support for the proposition that he knew of, participated in, or furthered any fraudulent private placement of Cubed securities. *See* Defendant's Letter Memorandum, dated Oct. 22, 2018 ("Def. Mem."), Dkt. No. 671, at 5. That argument is belied by the record.

Pointedly, in a wire intercept of a conversation, occurring on June 5, 2014, between

3

Goodrich and co-conspirator Abraxas Discala (who was convicted after trial), Goodrich asks Discala if "Kyleen [Cane is] available today," to which Discala responds that Goodrich should ask Cane what she might "have at a buck on [Cubed]." Transcript of June 5, 2014 Wiretapped Call.[2] This conversation dooms Goodrich's argument. Kyleen Cane is an attorney whose law firm orchestrated the reverse merger that created Cubed and who personally organized the complementary private placement of Cubed stock after the reverse merger. Despite her acquittal at trial, see Dkt. No. 629, the evidence showed that the private placement Cane organized and supervised was an essential component of the overall manipulation of Cubed stock.

Fatally, the wire intercepted conversation illustrates that Goodrich, during the height of the manipulation of Cubed, was well aware of Cane and her ongoing private sale of Cubed stock. He wanted, specifically, to acquire for himself Cubed shares "at a buck," then available at that price only through Cane's private placement sale. Goodrich's knowledge of Cane's involvement in Cubed is critical because, if Goodrich was unaware of her role in the private placement, there would be no reason for him to be aware of her at all. As his attorney acknowledged at the restitution hearing, see Restitution Hearing Transcript at 27-28, Goodrich claims he was only involved as a broker/dealer and had no obligation to vet Cubed's bona fides in any way. Yet Cane was neither a broker nor a dealer. If Goodrich was unaware of her role in the private placement of Cubed stock, and of the private placement's importance to the manipulation of Cubed's publicly traded stock, he would have had no reason to contact her about Cubed at all.

Certainly, there is no evidence to suggest that Goodrich was involved in the planning or

---

[2] At the Court's direction, the government supplied a transcript of the relevant wire intercept, highlighting a part of the key exchange in Goodrich's conversation with Discala. Since no objection or exception was taken, the Court assumes that the conversation is authentic and that it was transcribed correctly.

4

execution of the private placement of Cubed stock, but the evidence adequately establishes that he was well aware that (1) the private placement was ongoing during the manipulation of the publicly traded stock, (2) Discala was very much a part of Cane's share distribution operation and, (3) as would any broker-dealer transactions, the private placement transactions would have an impact on all shares of Cubed, whether traded publicly or sold privately. Thus, when Cubed ultimately crashed, the losses associated with the shares sold through the private placement were reasonably foreseeable by Goodrich.

The synergy between the public trading and private placement transactions is undeniable. Each one made the other more attractive. Goodrich was surely aware of that synergy and of its inevitable impact on both classes of victims. *Cf. United States v. Paul*, 634 F.3d 668, 676-77 (2d Cir. 2011) ("pertinent question" is whether losses from scheme in which defendant was not involved "can be considered losses resulting from the securities fraud to which [he] pled guilty"). As a consequence, the Court finds, by a preponderance of the evidence, that the private placement losses were reasonably foreseeable by Goodrich. Goodrich is, resultingly, liable for the $1,850,000.00 in private placement losses incurred after he joined the conspiracy on April 22, 2014.

Finally, Goodrich asks that any restitution award be apportioned among the convicted co-conspirators, and that he not be jointly and severally liable for the whole amount, because, in this multimillion dollar manipulation, his total trading volume in Cubed was approximately $40,000 and his commissions on those sales were $3,938. Moreover, Goodrich points out, he has already paid $805,000 to the SEC in connection with an action in the District of New Jersey, involving another manipulation scheme, for which he was convicted (and which was transferred here at the time of this sentencing). Def. Mem. at 5-6.

Although not contesting those facts, the government observes, and appears to do so accurately, that most of Goodrich's co-defendants liable for the Cubed losses are cash-strapped, including Discala, who claims to lack funds even to pay counsel. As a result, the government reasons, any recovery by victims will be "severely diminish[ed]" if the Court apportions liability among the co-conspirators. *See* Government's Letter Memorandum, dated Oct. 19, 2018, Dkt. No. 664, at 5.

MVRA, of course, acknowledges the power of a sentencing court to exercise its discretion to apportion liability among multiple defendants "to reflect the level of contribution to the victim's loss and economic circumstances of each defendant." 18 U.S.C. § 3664(h). It is the government's burden to establish the appropriate award of restitution, as it has done here. In the Court's view, it is the defendant's burden to establish the propriety of any apportionment under MVRA. Goodrich has failed to carry that burden. He has not demonstrated that his relative economic circumstances are significantly worse than those of his responsible co-conspirators, or that apportionment will not significantly diminish chances that victims will recover restitution, such that his level of contribution to the victims' losses (as opposed to his limited gain from his actions) warrants apportioning liability. Accordingly, the Court declines to apportion restitution.

## Conclusion

For the reasons set forth above, an award of restitution against Goodrich is ordered in the amount of $2,329,007.05, jointly and severally with Abraxas J. Discala, Marc Wexler, Craig Josephberg, Matthew Bell, Victor Azrak and Jamie Sloan.

So Ordered.

Dated: Brooklyn, New York
December 6, 2018

/s/ USDJ ERIC N. VITALIANO
_____
ERIC N. VITALIANO
United States District Judge